UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Christine Alisen Radtke,** | Civil No. 10-4175 (MJD/JJG) |
| **Plaintiff,** | |
| v. | REPORT AND RECOMMENDATION |
| **Miscellaneous Drivers and Helpers Union Local #638 Health, Welfare, Eye and Dental Fund,** | |
| **Defendant,** | |
| v. | |
| **Calvin Everett Radtke,** | |
| **Counter Defendant.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Plaintiff Christine Alisen Radtke's Motion to Dismiss Counterclaim (Doc. No. 5). The Honorable Michael J. Davis, Chief United States District Judge, referred the motion to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the motion be granted, that the counterclaim be dismissed, and that Counter Defendant Calvin Everett Radtke be dismissed as a party to this action.

**I.     BACKGROUND**

This is an action for wrongful termination of coverage and benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. In 2005, Defendant Miscellaneous Drivers and Helpers Union Local #638 Health, Welfare, Eye and Dental Fund (Defendant) enrolled Plaintiff Christine Alisen Radtke (Plaintiff) as an eligible family dependent in an

employee benefit welfare plan (Plan), based on a representation by Counter Defendant Calvin Everett Radtke (Mr. Radtke) that Plaintiff was his spouse. Mr. Radtke is an employee of the United Parcel Service and an eligible participant under the Plan.

In April 2010, Defendant terminated Plaintiff's coverage and benefits after learning the following information: that Plaintiff had sex reassignment surgery in 2003; that she subsequently obtained an order granting a modification of her birth certificate to change her sex to female; that she obtained a replacement birth certificate designating her sex as female; that she and Mr. Radtke obtained a Minnesota marriage license; and that she and Mr. Radtke were married in Goodhue County Court on August 10, 2005. (Countercl. ¶¶ 8, 10, 12, 17.) Defendant concluded from this information that the Radtkes were not legally married because they were both male, and that Plaintiff therefore was not an eligible family dependent under the Plan. After losing an administrative appeal, Plaintiff brought this action for wrongful denial of benefits and restoration of benefits and coverage.

Defendant filed an answer and counterclaim, alleging that the Radtkes had "obtained the health care benefits from the Fund fraudulently and illegally" and requesting an award of restitution "equitably restoring to the Fund the wrongfully paid health care benefits." (Countercl. ¶¶ 24, 26.) Defendant itemized the benefits as $52,715.74 in medical benefits, $4,806.25 in dental benefits, and $22,888.80 in prescription drug benefits. (Countercl. ¶ 23.) These amounts total $80,410.79.

Defendant's prayer for relief states in full:

> **WHEREFORE**, Defendant Miscellaneous Drivers and Helpers Union Local No. 638  Health, Welfare, Eye and Dental Fund prays for judgment herein as follows:

      1.      Dismissing Plaintiff's Complaint with prejudice and on its merits, and adjudging that Plaintiff is not and has not been an eligible family dependent under the Plan.

      2.      Granting relief on Defendant's Counterclaim and ordering Plaintiff and Calvin Everett Radtke to make restitution to the Defendant in the amount of $80,410.79, together with interest thereon.

      3.      Ordering the joinder of Calvin Everett Radtke as a party to this action.

      4.      Awarding to the Defendant reasonable attorney fees and costs of this action.

      5.      For such other and further relief as the Court deems just and equitable.

(Countercl. at 9.) After Defendant filed its answer, the parties stipulated to add Mr. Radtke as a Counter Defendant.

Plaintiff now moves to dismiss the counterclaim on the basis that ERISA does not authorize the type of restitution Defendant seeks. Plaintiff argues that the restitution is legal in nature, while Defendant insists it is equitable. Although the counterclaim itself does not refer to ERISA, Defendant contends in its memorandum that it has stated a claim for relief under 29 U.S.C. § 1132(a)(3), and the Court will therefore treat the counterclaim as having been brought pursuant to ERISA.

## II.     DISCUSSION

Dismissal of a counterclaim is proper when the defendant fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A party who requests relief not available under ERISA has failed to state a claim under that statute. *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060, 1063 (8th Cir. 2006). In assessing the motion, the Court will assume the truth of the facts alleged in the counterclaim and make all reasonable inferences in Defendant's favor. *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) (citations omitted).

Because this action is governed by ERISA, the Court begins with the relevant statutory language. ERISA authorizes a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of the subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added).

"[R]estitution may be either equitable or compensatory." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999) (citations omitted). The distinction "focuses on the genesis of the award sought" by the wronged party. *Id.* Equitable relief "seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." *Id.* (citing Dan B. Dobbs, *Law of Remedies* § 4.1(1), at 369-71 (Abr. 2d ed. 1993)).

### A.  Supreme Court and Eighth Circuit Precedent

The United States Supreme Court has addressed the scope and nature of equitable restitution under ERISA on several occasions. In *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), the Court considered whether an ERISA plan's actuary could be liable for damages resulting from the plan's breach of fiduciary duty. *Id.* at 249-50, 254-55. The plan participants did not seek traditional equitable relief such as an injunction or restitution, but "monetary relief for all losses their plan suffered as a result of the alleged breach of fiduciary duties." *Id.* at 255. The Court deemed this request for money damages a "classic form of *legal* relief," which ERISA does not allow. *See id.* (citations omitted) (emphasis in original). Later, analyzing another

4

remedial provision of ERISA, the Court commented that equitable relief would include "restitution of ill-gotten plan assets or profits." *Id.* at 260.

The Court expounded on the "ill-gotten" language in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), holding that "an action for restitution against a transferee of tainted plan assets" is both appropriate and equitable. *Id.* at 253. The transferee of the ill-gotten assets was not the plan participant or a fiduciary, but a nonfiduciary party in interest to a transaction that was prohibited under ERISA. *Id.* at 241. Even though the transferee was not "the original wrongdoer," it could be liable for restitution because a "constructive trust is based on property, not wrongs." *Id.* at 251 (quoting 1 Dan B. Dobbs, *Law of Remedies* § 4.3(2), at 597 (2d ed. 1993)).

The next decision of significance, *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), addressed a health plan's ability to recover damages from a beneficiary under a reimbursement provision of the plan. *Id.* at 206. The Court began with the often intoned precepts that that ERISA is a "complicated and reticulated statute" and that ERISA's remedies should not be expanded beyond those enunciated by Congress. *Id.* at 209 (quotations omitted). The Court rejected the notion that all restitution was equitable in nature, explaining that "whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 212-13 (quoting *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (alteration in *Knudson)*.

For example, if a party cannot "assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the party has a right to legal restitution. *Id.* at 213 (quoting 1 Dan B. Dobbs, *Law of Remedies* § 4.2(1), at 571 (2d ed. 1993)). The remedy is

5

legal because, in essence, the party is seeking to impose personal liability for a sum of money. *Id.* (citation omitted). Equitable restitution, on the other hand, is "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (citations omitted). Once the money or property has dissipated, however, the party is no more than a general creditor with a claim for legal relief. *Id.* "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. Since the plan did not seek to impose a constructive trust or equitable lien on particular property, but personal liability for the benefits conferred on the beneficiary, the restitution was of a legal nature. *Id.*

Four years after *Knudson*, the Supreme Court decided *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). There, the Court considered whether an ERISA plan could recover medical expenses paid on behalf of a beneficiary, where the beneficiary had also recovered for the same injuries from a third party. *Id.* at 359. After the beneficiaries were injured in a car accident, they sought payment for medical expenses through their health insurance plan. *Id.* at 360. They also filed a tort action in state court seeking compensatory damages for their injuries. *Id.* The plan paid $74,869.37 in benefits, and the beneficiaries settled their tort action for $750,000. *Id.* The plan then filed an ERISA action seeking to recover the amount of medical expenses paid on behalf of the beneficiaries. *Id.* The beneficiaries placed $74,869.37 of the settlement funds in an investment account pending resolution of the lawsuit. *Id.*

The Court repeated its pronouncement in *Knudson* that "one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on 'particular funds

6

or property in the defendant's possession.'" *Id.* at 362 (quoting *Knudson*, 534 U.S. at 213). However, unlike *Knudson*, where the defendant did not possess specifically identifiable funds or property, the beneficiaries in *Sereboff* did possess such funds, and had even placed them in a discrete account until the question of restitution was resolved. *Id.* at 363. Thus, the Court found the *relief* equitable in nature. *Id.* The Court then proceeded to a separate inquiry regarding whether the *claim* was equitable in nature. *Id.* The Court found it was, based on a plan provision granting the plan the right to recover amounts paid by a third party on behalf of the beneficiary. *Id.* at 363-64.

Authority from the Eighth Circuit Court of Appeals is in accord with the above precedent. Recently, in *Halbach v. Great-West Life & Annuity Insurance Co.*, 561 F.3d 872 (8th Cir. 2009), the court reiterated that "[w]hether restitution is legal or equitable depends upon the basis for the plaintiff's claim and the nature of the remedies sought." *Id.* at 883 (citing *Knudson*, 534 U.S. at 213). The plaintiff may not seek to impose personal liability but only the restoration of particular funds in the defendant's possession. *Id.* The court reminded lower courts grappling with the equitable/legal distinction to "ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is specifically identifiable as belonging in good conscience to the plaintiff and can clearly be traced to particular funds or property in the defendant's possession." *Id.* (quoting *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 596-97 (8th Cir. 2005)).

In Defendant's primary Eighth Circuit authority, *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894 (8th Cir. 2006), the court approved reimbursement of overpaid social security disability benefits after finding the relief equitable in nature. *Id.* at 901. Critical to the *Dillard's* decision was *Sereboff*'s reasoning that when a plan's provision "specifically

7

identifie[s] a particular fund, distinct from the [plaintiff's] general assets," the plan may "follow" those particular proceeds into the plaintiff's hands and impose a constructive trust or equitable lien on those funds. *Sereboff*, 547 U.S. at 364 (cited in *Dillard's*, 456 F.3d at 901).

Under any of the above authorities, the only conclusion to be drawn in this case is that the restitution sought by Defendant is legal in nature. In accordance with *Knudson*, the Court considers (1) the basis of Defendant's claim and (2) the nature of the underlying remedy sought. Defendant describes the basis of its claim as fraud,[1] and Plaintiff concedes that such a claim is equitable in nature. However, Defendant has not identified any particular money or property in Plaintiff's possession that should be restored to Defendant. Plaintiff never received one penny from Defendant. All funds paid by Defendant were paid directly to Plaintiff's healthcare providers. Moreover, Defendant has not asked to impose a constructive trust or equitable lien on Plaintiff's funds or property. Instead, Defendant has requested a monetary award in the amount of $80,410.79, payable from the Radtkes' general assets.

Relying on language from *Mertens* and *Harris*, Defendant contends that Plaintiff obtained "ill-gotten gains" through her allegedly fraudulent conduct, entitling it to relief. Again, this argument relates only to the part of the test concerning the nature of Defendant's claim. The Court also repeats that Plaintiff was not the recipient of any gains or assets. The Plan cannot recover "ill-gotten plan assets or profits" from Plaintiff or Mr. Radtke because they did not receive any such assets or profits. Finally, *Harris* did not provide for a cause of action against the original wrongdoers, but against the nonfiduciary transferees.

Defendant's measure of damages also indicates that the relief is legal rather than equitable in nature. Defendant has asked for a monetary award of $80,410.79, representing the

---

[1]   Defendant did not address preemption, and the Court will presume that Defendant is not asserting a state-law claim for fraud.

8

exact amount of money Defendant paid to Plaintiff's healthcare providers: $52,715.74 in medical benefits, $4,806.25 in dental benefits, and $22,888.80 in prescription drug benefits. Defendant values the harm done by its loss, not by Plaintiff's gain, which makes the nature of the remedy sought legal. *See Halbach*, 561 F.3d at 883.

### B.     Authority from this District

Chief Judge Davis addressed the reach of § 1132(a)(3)(B) in *Hotel & Restaurant & Bar Employees Fringe Benefit Funds v. Truong*, Civ. No. 01-873 (MJD/RLE), 2002 WL 171725 (D. Minn. Jan. 31, 2002). There, a benefit plan brought suit against a beneficiary for reimbursement of $25,012.14 paid in medical benefits, based on the beneficiary's alleged breach of the terms of the plan. *Id.* at *3. Chief Judge Davis found that the plan's requested relief was not equitable in nature, but that the plan "quite plainly seeks money damages based on a contractual obligation, or legal relief." *Id.* at *4.

In the case at hand, Defendant was careful to couch its requested relief in terms of "restoration," "restitution," and "equitable." But looking past the labels, Defendant's requested relief is simply a request for monetary damages based on contractual terms of the Plan. Although Defendant does not refer to any particular Plan provision in its counterclaim, its answer alleges that the Plan provides for termination of coverage if an employee or dependent falsifies information on their application. (Answer ¶ 29.) And in Defendant's memorandum, it refers to two specific Plan provisions authorizing recovery of payments and termination of coverage. (Def.'s Mem. Opp'n Mot. Dismiss at 9-10.) Defendant has not identified any other applicable

9

Plan or ERISA provision, and thus, the only inference is that Defendant is seeking relief based on a contractual obligation.[2]

### C.  Unpublished Decision from the Ninth Circuit

During the motion hearing, Defendant handed to the Court an unpublished opinion issued in 2009 by the Ninth Circuit Court of Appeals, *Northwest Administrators, Inc. v. Cutter*, No. 08-35156, 2009 WL 2012988 (9th Cir. July 9, 2009), *cert. denied.*, 130 S. Ct. 1085 (2010). Defendant did not cite the case in its memorandum, nor did Defendant provide the case to Plaintiff before the hearing. The Court therefore allowed Plaintiff to file a supplemental reply concerning the newly-provided authority, which Plaintiff filed on January 28, 2011.

In *Cutter*, a plan sought restitution for healthcare benefits paid on behalf of an individual enrolled as the participant's spouse, but whom the plan later learned was not married to the participant. *Id.* at *1. The court found that the participant acted wrongly in enrolling the individual and that the misrepresentation resulted in improper payments of more than $70,000. The court characterized the payments as "ill gotten gains." *Id.* (citations omitted). Even though the participant never actually possessed the payments, the court concluded that the plan could recover the amount of the medical payments as equitable restitution. *Id. Cutter* distinguished *Knudson* on the basis that *Knudson* did not involve "money obtained through fraud or wrongdoing." *Id.* (quotation omitted).

Respectfully, the Court concludes that *Cutter* cannot be aligned with the precedent of the Eighth Circuit, which requires a court to consider separately (1) the nature of the claim and

---

[2]   Section § 1132(a)(3)(B) "does not, after all, authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of "redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan." *Mertens*, 508 U.S. at 253 (emphasis and alterations in original).

10

(2) the nature of the relief sought. *Cutter* looked only at the fraudulent nature of the claim. This Court therefore declines to follow *Cutter*.

        **D.**        **Defendant's Alternative Forms of Relief**

Defendant asserts in a conclusory paragraph of its memorandum that it is seeking more than just monetary relief from the Radtkes. Defendant claims it is also seeking restitution from Plaintiff's healthcare providers, a set-off against future benefits for Mr. Radtke, and termination of Mr. Radtke's coverage. These arguments do not save Defendant's counterclaim.

First and foremost, Defendant has not stated a claim for relief under ERISA. Its sole claim is for restitution, and the restitution it seeks is not allowed under ERISA. The counterclaim does not set forth any other legal basis for relief.

Second, the alternative forms of relief do not comport with Federal Rule of Civil Procedure 8(a)(3), which requires a counterclaim to include a demand for all relief sought. None of the alternative forms of relief are included in the prayer for relief.

Third, the alternative remedies are not available or appropriate for the counterclaim. With respect to Plaintiff's healthcare providers, they are not parties to this action, and thus, no award of restitution may be entered against them. As for Mr. Radtke's future benefits, Defendant has not alleged any Plan or ERISA provision authorizing it to withhold or offset his future benefits. Finally, Defendant has not explained why it must prevail on an ERISA claim before it can terminate Mr. Radtke's coverage.

**III.**    **RECOMMENDATION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Dismiss Counterclaim (Doc. No. 5) be

**GRANTED**; that the counterclaim be **DISMISSED**; and that Counter Defendant Calvin Everett Radtke be **DISMISSED** as a party to this action.

Dated: February 11, 2011

                                                s/ *Jeanne J. Graham*
                                                JEANNE J. GRAHAM
                                                United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **February 28, 2011**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.